```
                UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF MISSISSIPPI
                      NORTHERN DIVISION

SINJEL, LLC                                          PLAINTIFF

VS.                         CIVIL ACTION NO. 3:22-cv-419-TSL-MTP

THE OHIO CASUALTY INSURANCE
COMPANY, LIBERTY MUTUAL
INSURANCE COMPANY, PYRON
GROUP, INC. AND JOHN DOES 1 – 10                    DEFENDANTS
```

MEMORANDUM OPINION AND ORDER

This cause is before the court on the motion of plaintiff Sinjel, LLC for remand pursuant to 28 U.S.C. § 1447. Defendants Liberty Mutual Insurance Company and The Ohio Casualty Insurance Company have responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion to remand should be denied.

Background

In December 2019, plaintiff Sinjel purchased with the intention to renovate a certain commercial building located on Highway 80 in Jackson, Mississippi. Initially, with assistance from Pyron Group, LLC (Pyron), a local insurance agency, plaintiff secured insurance coverage for the building under a $2,985,000 policy issued by Nautilus Insurance Company with

1

effective dates of December 27, 2019 through April 15, 2020. Commencing April 15, 2020, the property became covered under a Builders Risk policy issued by Ohio Casualty. On November 3, 2020, the property sustained a fire loss of unknown origin. By letter dated March 23, 2021, Ohio Casualty denied plaintiff's claim for policy benefits for the loss, citing as the basis for its denial the following policy provision:

> "We" only cover a vacant "existing building" for 60 consecutive days from the inception date of this policy unless building permits have been obtained and rehabilitation or renovation work has begun on the "existing building".1

The company wrote that it had confirmed that at the time of the loss, plaintiff had not commenced renovations nor had building permits been issued; and, since more than sixty days had passed since the policy took effect on April 15, 2020, the company concluded there was no coverage for the loss. Plaintiff requested that the company reconsider its denial, but the company maintained its position that the loss was not covered.

Plaintiff brought the present action in the Circuit Court of the First Judicial District of Hinds County, Mississippi, alleging claims against Ohio Casualty and Liberty Mutual2 for

---

1   This will be referred to as the vacancy clause or provision.
2   The policy was issued by Ohio Casualty, which is owned by

breach of contract and bad faith for alleged wrongful denial of its claim for benefits.  Plaintiff also sued Pyron, which had assisted plaintiff in securing the Ohio Casualty policy, charging that Pyron had breached its "duty to exercise reasonable diligence in obtaining an appropriate policy for the Insured"; misrepresented the nature or extent of the coverage offered or provided; failed to clarify the coverage; gave plaintiff inaccurate advice on the coverage needed; breached its "continuing duty to keep the Insured informed of any changes in coverage which it needed"; and "breached the additional duties and promises to Insured made in advertising, including the representation that they would 'design the right solutions to help protect your business and keep it moving forward.'"[3]

Ohio Casualty removed the case to this court, asserting that the requirements for federal diversity jurisdiction under 28 U.S.C. § 1332 are met because the amount in controversy alleged in the complaint exceeds $75,000 and because, although plaintiff has named as a defendant Pyron, whose citizenship is

---

Liberty Mutual Group.  These defendants will be referred to collectively as Ohio Casualty.
3    The complaint does not allege that Pyron had any role in the adjustment or denial of the claim and does not purport to assert a claim against Pyron for breach of contract or bad faith breach of contract.

3

not diverse from plaintiff's, Pyron's citizenship must be disregarded in the diversity inquiry because it has been improperly joined. Plaintiff has moved to remand, contending that Pyron is properly joined and that consequently, there is no diversity jurisdiction and the case must be remanded.

Improper Joinder Principles

Any civil action over which the district court would have had original jurisdiction may be removed from state to federal court. This court has original jurisdiction of all civil actions between citizens of different states where the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1)-(2). This statute has been interpreted to require complete diversity of citizenship, meaning that "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." McLaughlin v. Miss. Power Co., 376 F.3d 344, 353 (5th Cir. 2004) (citations and quotations omitted). In determining whether there is complete diversity of citizenship, the court disregards the citizenship of any party that is not properly joined. See Flagg v. Stryker Corp., 819 F.3d 132, 136 (5th Cir. 2016) (en banc) ("[I]f the plaintiff improperly joins a non-diverse defendant, then the court may disregard the citizenship

4

of that defendant, dismiss the non-diverse defendant from the case, and exercise subject matter jurisdiction over the remaining diverse defendant.").

Improper joinder can be established either by showing (1) that there is actual fraud in the pleading of jurisdictional facts or (2) that the plaintiff is unable to establish a cause of action against the resident defendant. Smallwood v. Illinois Cent. R. Co., 385 F.3d 568, 573 (5th Cir. 2004) (en banc). The removing party has the burden to prove improper joinder. Carriere v. Sears, Roebuck and Co., 893 F.2d 98, 100 (5th Cir. 1990). Here, there is no suggestion that plaintiff has not correctly alleged the parties' citizenship and thus, the issue for the court's consideration is plaintiff's ability to establish a cause of action against Pyron. On this issue,

> the test for [improper] joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.

Smallwood, 385 F.3d at 573 (quoting Travis v. Irby, 326 F.3d 644, 648 (5th Cir. 2003)). "If there is arguably a *reasonable basis* for predicting that the state law might impose liability on the facts involved, then there is no [improper] joinder.

5

This *possibility, however, must be reasonable, not merely theoretical.*" Travis, 326 F.3d at 648 (quoting Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)) (emphasis in original) (quotations omitted)).

Ordinarily, to determine whether the plaintiff could possibly recover against the nondiverse defendant, the court conducts a "Rule 12(b)(6)-type analysis," looking to the allegations of the complaint to assess whether it states a claim against the nondiverse defendant. Id. If the complaint can survive a Rule 12(b)(6) challenge, then it usually will follow that there is no improper joinder. Id. In some cases, however, the plaintiff has stated a claim for relief but has "misstated or omitted discrete facts that would determine the propriety of joinder"; "[i]in such cases, the court may, in its discretion, pierce the pleadings and conduct a summary inquiry." Id. (citing Badon v. RJR Nabisco, Inc., 224 F.3d 382, 389 n.10 (5th Cir. 2000)). See also Campbell v. Stone Ins., Inc., 509 F.3d 665, 669 (5th Cir. 2007) (citations omitted) ("The scope of the inquiry for improper joinder … is broader than that for Rule 12(b)(6) because the Court may pierce the pleadings and consider summary judgment-type evidence to determine whether the plaintiff has a basis in fact for the claim."). Under the

6

latter approach, "the court may consider summary judgment-type evidence in the record, but must also take into account all unchallenged factual allegations, including those alleged in the complaint, in the light most favorable to the plaintiff." Travis, 326 F.3d at 648-49.

"Importantly, as the Fifth Circuit has held many times, to determine whether the nondiverse defendant has been improperly joined, the court considers only the claims in the state court complaint as they existed at the time of removal." Southern Waterworks Supply, Inc. v. Keller, 2020 WL 8409100, at *3 (S.D. Miss. Apr. 16, 2020) (citations omitted). In determining whether a claim is stated, however, "the court may consider allegations in post-removal filings which 'clarify or amplify the claims actually alleged in the [complaint] that was controlling' when the case was removed." Id. (quoting Griggs v. State Farm Lloyds, 181 F.3d 694, 700 (5th Cir. 1999)).

Analysis

Plaintiff's principal position in this cause is that the Ohio Casualty policy actually does provide coverage for its loss and that Ohio Casualty denied its claim wrongfully and in bad faith. It asserts, in the alternative, that if it is determined that the policy does not provide coverage for the subject fire

7

loss, then Pyron is liable on one or more of various theories of recovery, set out *supra* page 3. Considering the complaint, together with additional evidentiary material adduced by the parties, the court concludes that plaintiff has no possibility of recovery on any of the bases alleged in the complaint.

### Failure to Procure/Advise as to Appropriate Coverage

Construing the complaint in the light most favorable to plaintiff, the allegation in the complaint that the coverage provided by the Ohio Casualty policy was inadequate is grounded on the policy's vacancy clause, which, to reiterate, states that coverage is only afforded for a "vacant 'existing building' for 60 consecutive days from the inception date of this policy unless building permits have been obtained and rehabilitation or renovation work has begun" on the building.[4] Plaintiff alleges that it was not able to timely commence renovation work on the building because of a series of stay-at-home Civil Emergency

---

4   In the motion to remand, plaintiff asserts that the complaint also "makes the case against Agent by contending the Policy [is inadequate because it] does not require payment to the mortgagee." The court disregards this argument, as there is no such claim asserted against Pyron in the complaint. To the contrary, the complaint expressly alleges that the policy provides for payment to the mortgagee, and that Ohio Casualty had no legitimate reason for not honoring the provision by paying the mortgagee.

8

Orders issued by Jackson Mayor Chokwe Antar Lumbuba beginning March 31, 2020 in response to the COVID-19 pandemic. Specifically, plaintiff alleges that on March 31, 2020, two weeks before the policy was issued, Mayor Lumumba, based on the recommendation of the City's COVID-19 Response Task Force, issued an Order Proclaiming Civil Emergencies in the City of Jackson which required individuals to stay at home and practice social distancing, barred non-essential businesses and limited certain other activities in the City of Jackson. By its terms, the order was to expire April 17, 2020, but on April 19, two days after the insurance policy became effective, the mayor issued an executive order continuing the order; and he subsequently issued a succession of civil emergency orders that extended the stay-at-home directive and ban on non-essential businesses for a period that ultimately lasted more than a year.[5]

Plaintiff avers that "[a]fter issuance of the Policy on April 15, 2020, [it] was forced to suspend its plans to renovate the property due to the impact of" these civil emergency orders, which is why it failed to timely commence renovations or obtain building permits. And this, in turn, is the reason Ohio

---

5   According to the complaint, subsequent orders were issued on April 20, 2020, May 16, 2020, June 3, 2020, July 2, 2020, August 4, 2020, and August 27, 2020.

9

Casualty gave for denying coverage for the November 2020 fire damage to the property. Plaintiff alleges that Pyron was "well aware of the problems to businesses associated with COVID-19," and that consequently, Pyron was negligent in procuring a policy that required plaintiff to commence renovations or obtain permits within sixty days of the policy's inception date. Plaintiff further alleges it had a "special relationship" with Pyron which created a continuing duty by Pyron to advise it of appropriate coverage after the policy was issued.

> Regarding the duties of an insurance agent,
>
> Mississippi cases provide this: "An insurance agent owes a duty to his principal to procure insurance policies with reasonable diligence and good faith." See [Taylor Mach. Works, Inc. v. Great American Surplus Lines Ins. Co., 635 So. 2d 1357, 1362 (Miss. 1994)]. The cases recognizing a claim for negligent failure to procure do so in the context of allegations that "the agent either failed altogether to procure coverage or the policy procured by the agent did not provide the coverage requested by the insured." See Curry v. State Farm Mut. Auto. Ins. Co., 599 F. Supp. 2d 734, 738-39 (S.D. Miss. 2009) (collecting cases).

Emerald Coast Finest Produce Co., Inc. v. Alterra American Ins. Co., 864 F.3d 394, 399 (5th Cir. 2017). Further, as a general rule,

> insurance agents in Mississippi [do not] have an affirmative duty to advise buyers regarding their coverage needs. The majority of jurisdictions have stated strong policy reasons for finding that an agent does not have an affirmative duty to advise the

10

> insured of coverage needs: insureds are in a better position to assess their assets and risk of loss, coverage needs are often personal and subjective, and imposing liability on agents for failing to advise insureds regarding the sufficiency of their coverage would remove any burden from the insured to take care of his or her own financial needs. However, … if agents do offer advice to insureds, they have a duty to exercise reasonable care in doing so.

Mladineo v. Schmidt, 2 So. 3d 1154, 1163 (Miss. 2010). As noted in Mladineo, however, "[a] majority of states hold that a special relationship could impose upon an insurance agent an affirmative duty to provide advice regarding the availability or sufficiency of insurance coverage." Id. (citations omitted).

Plaintiff does not allege that Pyron failed altogether to procure coverage or that it failed to procure the coverage requested by plaintiff. Moreover, plaintiff does not allege that Pyron offered advice on coverage. What plaintiff does allege is that it was in a special relationship with Pyron, due to which Pyron had an affirmative duty to advise plaintiff as to the adequacy of coverage. As the basis for the existence of a special relationship, plaintiff alleges only that it has done a volume business with Pyron over a fifteen-year period, during which time it has relied on Pyron to obtain suitable insurance coverage for plaintiff's businesses. In the court's view, it is

11

doubtful this would create the kind of special relationship the Mississippi Supreme Court might find would give rise to an affirmative duty to advise on insurance coverage. Cf. Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co., 49 F.4th 894, 902 (5th Cit. 2022) (holding that under comparable Louisiana law, "what creates [an] insurance agent's duty to procure particular coverage is not a 'close relationship' with the insured but an insured's 'specific[]" request for "the type of insurance coverage ... needed.'").[6] But even assuming, solely for purposes of argument, that plaintiff has alleged sufficient facts to suggest the existence of a the kind of special relationship that might arguably give rise to an affirmative duty to advise, plaintiff still has not stated a claim for failure to procure/advise, as it has not alleged that the coverage secured

---

6   Plaintiff additionally alleges that Pyron "held [itself] out to be [a] professional advisor[] who would obtain appropriate coverage for insureds," and in support, points to the following statement on Pyron's website:  "We partner with families and business across Mississippi to find insurance solutions tailored to their individual needs.  We believe insurance is more than just a policy.  It's a partnership."  As a matter of law, a claim on a website to help "find insurance solutions" to meet prospective client's needs does not create an affirmative duty to advise an insured on his insurance needs. Cf. Coleman E. Adler & Sons, L.L.C. v. Axis Surplus Ins. Co., 49 F.4th 894, 901 (5th Cir. 2022) (holding that an agent does not "assume[] a duty to advise clients about pandemic-related coverage merely by holding itself out on its website as having expertise in 'hotel business income insurance.'").

12

by Pyron on the property was inadequate at the time the policy was issued, or that Pyron knew, either at the time the policy was issued or at any time prior to the fire loss, that the policy's coverage was deficient in any respect.  That is, plaintiff does not allege that Pyron knew, or had reason to know that plaintiff would be unable to commence renovations or obtain building permits within sixty days of the policy's inception date.[7]  Plaintiff alleges nothing more than that Pyron was "well aware of the problems to businesses associated with COVID-19." Plaintiff does not include any facts to suggest specifically what or when Pyron knew about COVID-19-related "problems to businesses" and more importantly, there are no facts to suggest that Pyron knew anything about problems *this insured* was having or likely to have.  Even assuming Pyron was, or reasonably should have been aware of Mayor Lumumba's March 31 Civil Emergency Order, there is no allegation in the complaint, or any facts alleged in the complaint that would support a charge that at the time Pyron procured the Ohio Casualty policy, it knew or reasonably should have known that the mayor would extend, or if

---

7   As discussed *infra* pp. 15-18, in the course of procuring the policy, Pyron expressly informed plaintiff of the policy's vacancy provision.  There nothing in the complaint to suggest that plaintiff objected to the provision or informed Pyron that it would have any difficulty in complying with the provision.

13

so, for how long he would extend the initial civil emergency order or equally pertinently, to show that Pyron knew or reasonably should have known that potential future extensions of the order would prevent plaintiff from commencing renovations or obtaining building permits on the insured property within the sixty-day period set forth in the policy's vacancy provision.[8]

Furthermore, even assuming that a special relationship existed which imposed on Pyron a duty to provide plaintiff with advice regarding its coverage needs, once the policy was issued covering the property, as a matter of law, Pyron had no affirmative duty to confirm that plaintiff had complied with the vacancy provision by timely commencing renovations or obtaining permits. And even assuming a duty to advise could possibly have

---

8   Citing Taylor Mack Works, Inc. v. Great American Surplus Lines Insurance Co., 635 So. 2d 1357 (Miss. 1994), plaintiff argues that Pyron breached the applicable standard of care by switching plaintiff's coverage from the Nautilus policy, which provided $2,985,000 in coverage with a waiver of the policy's vacancy provision, to the Ohio Casualty policy, which provided only $750,000 in coverage and included a vacancy provision. Plaintiff's reliance on Taylor Mack Works is misplaced. In Taylor Mack Works, the replacement policy procured by the agent contained a specific exclusion for an existing loss, which is a very different situation from that presented in this case. Here, while plaintiff implies that the inclusion of the vacancy clause in the Ohio Casualty policy rendered it void or materially defective *from the outse*t, that plainly is not the case.

14

arisen if plaintiff had informed Pyron or Pyron had otherwise come to know that plaintiff had not complied with this provision, there is no allegation or intimation to that effect in the complaint.[9]  For the foregoing reasons, plaintiff has not alleged a cognizable claim for failure to procure or advise.

<u>Misrepresentation/Failure to Clarify Coverage</u>

Plaintiff does not allege but implies that he was unaware of the policy's vacancy provision, and charges that Pyron "misrepresented the nature or extent of coverage offered or provided" and "failed to clarify the coverage."  There is no factual allegation anywhere in the complaint about any representation Pyron made that was inconsistent with the terms of the policy or about anything relating to the policy's coverage that Pyron failed to clarify.  And even if the court were to assume for argument's sake that the complaint could

---

9   Cameron Farmer, the Pyron agent who worked with plaintiff in securing coverage for the property, has provided an affidavit in which he states that he was not aware that the City's COVID-19-related orders impacted plaintiff's ability to begin renovations or upgrades to the property and that he did not become aware until after the fire loss that renovations had not begun.  He further states that he was aware of other construction that was occurring in the City of Jackson despite the mayor's civil emergency orders, e.g., an apartment complex next to his office in Jackson, and that he neither knew nor had reason to know that plaintiff had not begun renovations on the property within sixty days of the policy's inception date.

15

reasonably be construed as alleging that the agent misrepresented the vacancy provision or the amount of coverage the policy provided, such allegations are thoroughly belied by an e-mail sent by Pyron to plaintiff at 9:52 a.m. on April 10, 2020, which stated:

> Please review the attached Builders Risk Policy quote for Sinjel's building at 3750 HWY 80.  The primary details are on page 5.
>
> *Important note – this coverage will be null and void after 60 days if permits haven't been pulled and work hasn't begun on the renovations and upgrades to the building.*  …
>
> Monthly premium is $122 and it must be drafted.  Please provide the routing and account # for the checking account you want to make payments from.  Liberty Mutual will not allow the policy to be issued without setting up the pay plan.
> ….
> [W]e will issue this policy Monday if you can get the bank account #s to me over the weekend.

(Emphasis added).  The e-mail thread reflects a reply by plaintiff at 12:16 p.m. the same day, stating: "plz give me a call when you have a chance.  We will find another company before we cancel the ins plz help me."  Pyron responded:

> We did find another company, Liberty Mutual, and the cost is amazingly low.  Is there a problem with what I sent this morning?  $122 a month for $1 million of building coverage can't be beat.

To this, plaintiff replied, "That's a good price.  Call me so we talk about that."

16

Plaintiff contends there are several potential "logical inferences" that could be drawn from its 12:16 p.m. e-mail to Pyron, and that the meaning and import of its reply is a merits issue, which must be resolved in its favor on a remand motion. These proffered "logical inferences" are that plaintiff "(1) did not review the April 10, 2020, 9:51 AM email [from the agent], or (2) did not understand the proposal, or (3) was not interested in the proposed policy with a provision whereby the policy may be void after the property is vacant for 60 days." It would in fact appear from the content of plaintiff's initial reply that plaintiff had not read the agent's first e-mail; but plaintiff's own failure to read the e-mail is not a basis for imposing liability on the agent, who undertook to point out to plaintiff an "important" provision in the policy, which in the end was the very provision that was the basis for the insurer's denial of plaintiff's claim.10  Furthermore, there was nothing unclear about the e-mail.  No reasonable person could have failed to comprehend that the proposed policy would be "null and void after 60 days if permits haven't been pulled and work

---

10    Even if plaintiff initially overlooked the first e-mail from Pyron, it was directed to it in Pyron's subsequent e-mail, which referred to the e-mail it had sent to plaintiff "this morning."

17

hasn't begun on the renovations and upgrades to the building." Lastly, the court has no hesitation in concluding that as a matter of law, it is neither a logical nor reasonable inference from the reply that the insured was "not interested" in the policy because of the vacancy provision.11  The circumstances simply do not support such an inference.

In sum, plaintiff has not cognizable claim for misrepresentation or "failure to clarify."

Other Putative Claims

Plaintiff argues *in its motion* that Pyron is potentially liable because it "continued to collect premiums on the Policy … long after the denial letter."  There is no such claim in the complaint.  In fact, the complaint does not allege that Pyron ever collected premiums on the policy and instead states that monthly premiums were paid directly to Ohio Casualty by automatic draft.

Plaintiff also argues that Pyron misrepresented that the

---

11  Plaintiff has argued at length that knowledge of the vacancy provision cannot be imputed to it because Pyron did not provide it with a copy of the policy until just three days before the fire loss.  In Farmer's affidavit, however, he explains that plaintiff was provided online access to the policy and that plaintiff never informed Pyron that it was not able to access the policy.  Moreover, even if plaintiff was not able to access the policy itself, Pyron specifically advised plaintiff of the policy's vacancy provision in its April 10 e-mail.

18

policy was still in effect even after the insurers sent their March 10, 2021 denial letter by sending out certificates certifying the policy was still in effect.  Plaintiff does not allege that it relied in any way or was harmed by any possible representation regarding continuation of coverage under the policy after the denial.  At the time the certificates were sent, the loss had occurred and plaintiff's claim had been denied.  Consequently, plaintiff was obviously fully aware of Ohio Casualty's position on coverage.  There is no viable claim on this basis.

Plaintiff also argues in the motion that "Paragraph 58 of the complaint and its fifteen subparts … allege a cause of action for breach of the Agent's duty of good faith."  Paragraph 58 is in that part of the complaint that asserts "Claims Against *Insurance Company Defendan*ts for Breach of Contract and Bad Faith" (emphasis added), and clearly refers to the actions of the company and its adjuster, who is expressly alleged to have acted as agent of the company, for whose actions the company is vicariously liable.  The complaint cannot be reasonably read as purporting to state a claim against Pyron for bad faith.

Conclusion

Based on the foregoing, the court concludes that plaintiff

19

has no possibility of recovery against Pyron.[12]  It is therefore ordered that plaintiff's motion to remand is denied, and Pyron is dismissed from this action.  See <u>Burchfield v. Foremost Ins. Group</u>, 2017 WL 1167278, at *6 (N.D. March 28, 2017) ("Where a plaintiff improperly joins defendants, dismissal of claims against those defendants is appropriate.") (citation omitted).

SO ORDERED this 27th day of October, 2022.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

12   The court has considered all of plaintiff's arguments. Any argument that has not been specifically addressed herein would not have changed the outcome.